## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| XERIANT, INC., | ) | Case No.: 23-CV-10656 (JPO) |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | **STIPULATED PROTECTIVE ORDER** |
|  | ) | **AND ESI PROTOCOL** |
| XTI AIRCRAFT COMPANY, DOE COMPANY | ) |  |
| #2, DOE PERSON #1-5 | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

Plaintiff Xeriant, Inc. and Defendant XTI Aircraft Company, by and through their undersigned counsel, hereby stipulate as follows:

### PROTECTIVE ORDER

1.       This Order ("<u>Protective Order</u>") is made under Fed R. Civ. P. 26(c). It governs any document, information, or other thing furnished by any party to any other party in this action, and it includes any nonparty who receives a subpoena in connection with this action. The information protected includes, but is not limited to: answers to interrogatories; answers to requests for admission; responses to requests for production of documents; deposition transcripts and videotapes; and deposition exhibits; and other writings or things produced, given, or filed in this action that are designed by a party as "<u>Confidential</u>" or "<u>Attorney Eyes Only</u>" in accordance with the terms of this Protective Order, as well as to any copies, excerpts, abstracts, analyses, summaries, descriptions, or other forms of recorded information containing, reflecting, or disclosing such information.

### Designation and Maintenance of Information

2.       For purposes of this Protective Order:

    a.  the "Confidential" designation means that the document includes (i) trade secrets or competitively sensitive information (such as confidential research, development, technical, commercial, or financial information) that is not otherwise publicly accessible or available; (ii) information a party otherwise believes in good faith to be entitled to protection under FED. R. CIV. P. 26(c)(1)(G); (iii) information received in confidence from a third party, or (iv) other information required by law or agreement to be kept confidential; and

    b.  the "Attorney Eyes Only" designation means that the document includes information that the producing party deems especially sensitive, which may include, but is not limited to, trade secrets or other proprietary, confidential, research, development, client, financial, technical, marketing, business, or personal information.

3.    Documents and things produced during the course of this litigation within the scope of ¶ 2(a) above may be designated by the producing party or nonparty as containing Confidential Information by placing on each page and each thing a legend, or otherwise conspicuously designating electronically stored information, substantially as follows:

**PROTECTED – CONFIDENTIAL**

4.    Documents and things produced during the course of this litigation within the scope of ¶ 2(b) above may be designated by the producing party or nonparty as containing Confidential Information by placing on each page and each thing a legend, or otherwise conspicuously designating electronically stored information, substantially as follows:

**PROTECTED – ATTORNEYS EYES ONLY**

5.    Notwithstanding ¶¶ 3–4, a party may designate information disclosed at a

deposition as Confidential or Attorney Eyes Only by requesting the reporter to so designate the transcript or any portion of the transcript on the record during the course of the deposition. If no such designation is made at the time of the deposition, any party will have five (5) calendar days after the deposition transcript becomes available to the deponent to designate, in writing to the other parties and to the court reporter, whether the transcript is to be designated, in whole or in part, as Confidential or Attorney Eyes Only. If no such designation is made at the deposition or within this five (5) calendar day period (during which period, the transcript must be treated as Confidential), the entire deposition will be considered devoid of Confidential or Attorney Eyes Only information. Each party and the court reporter must attach a copy of any final and timely written designation notice to the transcript and each copy of the transcript in its possession, custody, or control, and the portions designated in such notice must thereafter be treated in accordance with this Protective Order. It is the responsibility of counsel for each party to maintain materials containing Confidential or Confidential Attorney Eyes Only designations in a secure manner and appropriately identified so as to allow access to such information only to such persons and under such terms as is permitted under this Protective Order.

6.      Notwithstanding ¶¶ 3–4, a party, within 14 (fourteen) calendar days of receiving Confidential or Attorneys Eyes Only information from a nonparty as part of this proceeding, may designate such information as Confidential or Attorneys Eyes Only. Until the earlier of the expiration of this fourteen-day period or a party's designation, such information must be treated as Confidential.

**Inadvertent Failure to Designate**

7.      The inadvertent failure to designate or withhold any information as confidential or privileged will not be deemed to waive a later claim as to its confidential or privileged nature or to stop the producing party from designating such information as confidential or privileged at a

later date in writing and with particularity. The information must be treated by the receiving party as confidential or privileged from the time the receiving party is notified in writing of the change in the designation.

### Challenge to Designations

8.     A receiving party may challenge a producing party's designation at any time. Any party disagreeing with a designation must request in writing that the designating party or nonparty change the designation and shall describe with particularity the documents or information in question and the grounds for the requested change. The producing party will then have seven (7) calendar days after receipt of a challenge notice to advise the receiving party whether or not it will change the designation. Within seven (7) calendar days of the written response, the parties must engage in a good faith telephonic meet-and-confer conference to attempt resolution of the dispute. If the parties are unable to reach agreement after the expiration of this fourteen (14) calendar day timeframe and mandatory meet-and-confer process, and after the conference required under Rule 4(B) of this Court's Individual Rules and Practices in Civil Cases, the party disagreeing with the designation may at any time thereafter seek an order to alter the confidential status of the designated information. Until any dispute under this paragraph is ruled upon by the presiding judge, the designation will remain in full force and effect, and the information will continue to be accorded the confidential treatment required by this Protective Order. Neither the taking of any action in accordance with the provisions of this Protective Order, nor the failure to object thereto, shall be construed as a waiver of any claim or defense in this proceeding. Moreover, the failure to designate information as confidential in accordance with this Protective Order and the failure to challenge such designation at a given time will not preclude the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof. The entry of this Protective Order will neither be construed as a waiver of any person's right to object to furnishing information in response to discovery in this

proceeding, nor relieve any person of the obligation to produce information in the course of discovery in this proceeding.

**Disclosure and Use of Confidential or Attorneys Eyes Only Information**

9.     Information designated as Confidential or Attorney Eyes Only may only be used for purposes of preparation, trial, and appeal of this action. Confidential information or Attorney Eyes Only information may not be used under any circumstances for any other purpose.

10.     Subject to ¶ 12 below, Confidential information may be disclosed by the receiving party only to the following individuals, provided that such individuals are informed of the terms of this Protective Order:

    a.  The Court, and its personnel, presiding over this action and related officials involved in this action or any appellate review of this action in which Confidential information is used, including judges, magistrates, jurors, court reporters, and persons preparing transcripts of testimony, and other personnel of the Court;

    b.  The parties, including their counsel, staff, employees, and agents (including consultants not covered under subparagraph 9(f) below, as well as contractors assisting the parties in the preparation or hearing of this action under the direction and control of the parties or their counsel, staff, employees, or agents;

    c.  In-house counsel for the receiving party;

    d.  Outside counsel for the receiving party, as well as their associated attorneys and other employees or contractors assisting such counsel in the preparation or hearing of this action under the direction and control of such counsel;

e.  Supporting personnel employed by (c) and (d), such as paralegals, legal secretaries, data entry clerks, legal clerks, and private photocopying services;

f.  Experts or consultants retained or consulted by the parties in this action, including the employees of such experts or consultants who are assigned to assist such experts or consultants, in connection with services in the preparation or hearing of this action or any appellate review or remand of this action, provided that they sign Exhibit A;

g.  Any person who, based on a good faith and objectively reasonable belief or understanding of counsel of record for the producing party, created, sent, received or reviewed Confidential information, or who has had access to the Confidential information independent of this action;

h.  Any person whom the producing party believes in good faith may be a trial or deposition witness and the witness's counsel, if the Confidential information is, based on a good faith and objectively reasonable belief or understanding of counsel of record for the producing party, reasonably related to the witness's testimony, provided that they have signed Exhibit A; and

i.  Any persons requested by counsel to furnish services such as document coding, image scanning, mock trial, jury profiling, mediation, translation services, court reporting services, demonstrative exhibit preparation, or the creation or maintenance of any computer database from documents.

11.     Subject to ¶ 12 below, Attorneys Eyes Only information may be disclosed by the receiving party only to the following individuals, provided that such individuals are informed of the terms of this Protective Order:

a.  The Court, and its personnel, presiding over this action and related officials involved in this action or any appellate review of this action in which Confidential information is used, including judges, magistrates, jurors, court reporters, and persons preparing transcripts of testimony, and other personnel of the Court;

b.  Outside counsel for the receiving party, as well as their associated attorneys and other employees or contractors assisting such counsel in the preparation or hearing of this action under the direction and control of such counsel;

c.  Supporting personnel employed by (b), such as paralegals, legal secretaries, data entry clerks, legal clerks, and private photocopying services;

d.  Experts or consultants retained or consulted by the parties in this action, including the employees of such experts or consultants who are assigned to assist such experts or consultants, in connection with services in the preparation or hearing of this action or any appellate review or remand of this action, provided that they sign Exhibit A;

e.  Any person who, based on a good faith and objectively reasonable belief or understanding of counsel of record for the producing party, created, sent, received or reviewed Attorneys Eyes Only information, or who has had access to the Attorneys Eyes Only information independent of this action;

f. Any persons requested by counsel to furnish services such as document coding, image scanning, mock trial, jury profiling, mediation, translation services, court reporting services, demonstrative exhibit preparation, or the creation or maintenance of any computer database from documents.

12. For those individuals required to sign Exhibit A, signed statements from each individual shall be retained by counsel and need not be filed with the Court or served upon opposing counsel, unless requested for good cause or ordered by the Court. A person's refusal or practical inability to sign the statement, after the party's good-faith effort to secure signature, shall not restrict the party (or its counsel) from disclosing the materials to the person during trial, deposition, or other discovery or pretrial proceeding; provided, however, that the party (or its counsel) shall serve on or provide to the person a copy of this Protective Order before the disclosure, and, in the case of the person's refusal, makes a record of the person's refusal to sign, or, in the case of impracticability, makes a good-faith attempt to obtain the person's signature after the disclosure.

13. Information that is Confidential or Attorneys Eyes Only may be disclosed to a person who is not already allowed access to such information under this Protective Order if:

a. The information was previously received or authored by the person or was authored or received by a director, officer, employee, or agent of the company for which the person is testifying as a designee under FED. R. CIV. P. 30(b)(6);

b. The designating party is the person or is a party for whom the person is a director, officer, employee, consultant or agent; or

c. Counsel for the party designating the material agrees that the material may be disclosed to the person.

In the event of disclosure under this paragraph, only the reporter, the person, his or her counsel, the presiding judge, and persons to whom disclosure may be made and who are bound by this Protective Order, may be present during the disclosure or discussion of Confidential information or Attorney Eyes Only information. Disclosure of material pursuant to this paragraph does not constitute a waiver of the confidential status of the material so disclosed.

14.    Nothing in this Protective Order shall restrict the use of Confidential information or Attorney Eyes Only information outside of this litigation by any person, or the disclosure of Confidential information or Attorney Eyes Only information to any person (or that person's counsel), who: (a) originally disclosed, provided, or produced such Confidential information or Attorney Eyes Only information in this action; (b) has had such Confidential information or Attorney Eyes Only information in its possession, custody, or control independent of this action; or (c) has discovered such Confidential information or Attorney Eyes Only information independent of this action.

**Nonparty Information**

15.    The existence of this Protective Order must be disclosed to any person producing documents, tangible things, or testimony in this action who may reasonably be expected to desire confidential treatment for such documents, tangible things, or testimony. Any such person may designate documents, tangible things, or testimony confidential pursuant to this Protective Order.

**Filing Documents with the Court**

16.    If any party wishes to submit Confidential information or Attorney Eyes Only information to the Court, the submission must be filed in accordance with Rule 2(E) of this Court's Individual Rules and Practices in Civil Cases.

**No Prejudice**

17.    Producing or receiving confidential information, or otherwise complying with the terms of this Protective Order, will not (i) operate as an admission by any party that any particular

confidential information contains or reflects trade secrets or any other type of confidential or proprietary information; (ii) prejudice the rights of a party to object to the production of information or material that the party does not consider to be within the scope of discovery; (iii) prejudice the rights of a party to seek a determination by the presiding judge that particular materials be produced; (iv) prejudice the rights of a party to apply to the presiding judge for further protective orders; or (v) prevent the parties from agreeing in writing to alter or waive the provisions or protections provided for in this Protective Order with respect to any particular information or material.

18.    Nothing in this Protective Order shall be construed to affect in any way the admissibility of any Confidential information or Attorney Eyes Only information, testimony, or any other evidence in this proceeding. This Protective Order shall have no effect upon, and its scope shall not extend to, any party's use of its own discovery materials.

**Conclusion of Litigation**

19.    At the time that any consultant, expert, or other person retained to assist a party's counsel in this proceeding concludes his or her participation in this proceeding, such person shall return to counsel of record for the retaining party all copies of Confidential information or Attorney Eyes Only information, together with all notes, memoranda, or other papers reproducing, paraphrasing, or otherwise disclosing Confidential information or Attorney Eyes Only information, or certify as to their destruction. Within sixty (60) calendar days after final judgment in this action, including the exhaustion of all appeals, or within sixty (60) calendar days after dismissal pursuant to a settlement agreement, each party or other person subject to the terms of this Protective Order is under an obligation to destroy or return to the producing party all materials and documents containing Confidential information or Attorney Eyes Only information, and to certify to the producing party that this destruction or return has been done. However, counsel for any party is

entitled to retain all court papers, deposition and trial transcripts and other sworn statements, exhibits, expert reports, and attorney work product reproducing, paraphrasing, or otherwise disclosing Confidential information or Attorney Eyes Only information, provided that any such materials are maintained and protected in accordance with the terms of this Protective Order.

## Other Proceedings

20.     All persons who receive Confidential information or Attorney Eyes Only information shall remain under a continuing duty not to disclose such information, except as permitted in this Protective Order. This duty shall continue in full force and effect after the completion of this proceeding for a period of five (5) years. However, nothing contained in this Protective Order is intended to be construed as authorizing a person to disobey a lawful court order, request by a regulatory or self-regulatory organization, upon appropriate request, or subpoena issued in another proceeding. Any person or party subject to this Protective Order who may be subject to a motion to disclose another party's information designated Confidential information or Attorney Eyes Only information pursuant to this Protective Order must promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

## Remedies

21.     It is ORDERED that this Protective Order will be enforced by the sanctions set forth in FED. R. CIV. P. 37(b) and any other sanctions as may be available to the presiding judge, including the power to hold parties or other violators of this Protective Order in contempt. All other remedies available to any person injured by a violation of this Protective Order are fully reserved.

22.     Any party may petition the presiding judge for good cause shown if the party desires relief from a term or condition of this Protective Order.

## ESI PROTOCOL

23.    This section governs discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.

24.    Nothing in this ESI Protocol alters a party's rights, obligations, and responsibilities under the applicable Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Southern District of New York, or this Court's Individual Rules and Practices in Civil Cases. The Parties reserve all rights and objections. Without waiving any objections, the Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with Local Civil Rule 26.4.

25.    **DEFINITIONS**

a.    "Electronically stored information" or "ESI," as used herein, has the same meaning as contemplated by the Federal Rules of Civil Procedure.

b.    **"**Native data format" means and refers to the format of ESI in which it was generated and/or as used by the producing party in the usual course of its business and in its regularly conducted activities.

c.    "Metadata" means and refers to information about information or data about data, and includes without limitation (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage and/or validity of the electronic file and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

d.      "Static Image" refers to a representation of ESI produced by converting a native file into standard image format capable of being viewed and printed on standard computer systems.

e.      "Documents" includes writings, drawings, graphs, charts, photographs, sound recordings, images, and other data, data records or data compilations — stored in any medium from which information can be obtained.

f.      "Media" means an object or device, real or virtualized, including but not limited to a disc, tape, computer or other device, on which data is or was stored.

26.    The Parties will cooperate regarding the disclosure and formulation of appropriate search terms and protocols in advance of any search to collect ESI. The following process is designed to limit the scope of review and production, and thereby reducing discovery burdens decrease the burden of production and promote efficiency. The parties understand that time is of the essence in completing each step in the search and verification process.

27.    In locating potentially responsive ESI, the Producing Party shall identify to the Requesting Party custodians likely to have discoverable data, along with the proposed search terms. Absent a showing of good cause or agreement by the parties, a Requesting Party may request no more than ten (10) additional terms to be used in connection with the electronic search. Focused terms, rather than overbroad terms (e.g. company names and the names of a company's own product without a further limiter or modifier), shall be employed. If any search term(s) result in overly broad results and/or an unreasonable number of false hits, the Producing Party will operate in good faith to refine or modify such term(s) and will meet and confer with the requesting party regarding the same. The parties agree to meet and confer in good faith, if necessary, regarding the selection of terms to ensure the terms are sufficiently tailored to capture documents relevant to the above-

captioned litigation. If the parties cannot agree on search terms after reasonable, good-faith negotiations, the Requesting Party may seek relief in accordance with the Court's discovery dispute procedures.

28.    **FORMAT OF PRODUCTION**

29.    Production will be presumed to be made in native format, as the ESI exists on the producing party's computer systems.

30.    In cases where production in native format is not possible or advisable (e.g., redacted documents), or by agreement of the parties, TIFF format files may be produced. Accompanying this TIFF shall be a multipage text (.TXT) file containing searchable text from the native file, and the metadata in Appendix A. The parties are not obligated to manually populate the fields in Appendix A that cannot be extracted from a document, with the exception of the CUSTODIAN and VOLUME, which shall be populated by the producing party. Load files of the static images should be created and produced together with their associated static images to facilitate the use of the produced images by a document management or litigation support database system.

31.    To the extent a response to discovery requires production of discoverable electronic information contained in a database, in lieu of producing the database, the parties shall meet and confer to seek to agree upon a set of queries to be made for discoverable information and generate a report in a usable and exportable electronic file (e.g., Excel or CSV format) for review by the requesting party or counsel. Upon review of the report(s), the requesting party may make reasonable requests for additional information to explain the database schema, codes, and formats or to request specific data from identified fields. If a producing party asserts that certain ESI is inaccessible or otherwise unnecessary under the circumstances, or if the requesting party asserts that, following production, certain ESI is not reasonably usable, the parties shall meet and confer with the producing party's

technology expert to discuss resolving such assertions. If the parties cannot resolve any such disputes after such a meet and confer has taken place, the issue shall be presented to the Court for resolution.

32.     Load files should include the following information for all native, imaged, and scanned files produced:

a.     .DAT or .CSV file that contains information (metadata) about each document as set forth in Appendix A, including identifiers for the beginning and end of each document. Metadata produced will include, without limitation, file, application and system metadata. Where imaged documents are produced, the Metadata fields identified in Appendix A will be extracted and produced. The parties are not obligated to manually populate fields in Appendix A that cannot be extracted from a document, with the exception of the CUSTODIAN, VOLUME, and TIMEZONEPROCESSED, which shall be populated by the producing party.

b.     .OPT file to display the document images in e-discovery software.

c.     TEXT folder containing the companion OCR and/or extracted .TXT files for each document produced.

d.     NATIVES folder containing the unitized native files included in the production.

e.     IMAGES folder containing the unitized image files included in the production.

33.     De-duplication. The parties will undertake reasonable efforts to de-duplicate ESI production across custodial and non-custodial data sources. To "de-duplicate" across custodians means that exact duplicates of documents held by a particular custodian, as identified by MD5 or SHA1 hash values, and duplicates residing with another custodian, will not be produced twice. Hard copy documents shall not be eliminated as duplicates of responsive ESI. In addition, the identity of other

custodians of de-duplicated items must be listed in the "Custodian" field of the copy of the single record that is produced.

34.    Email Threading.  The producing party will de-duplicate identical emails using MD5 or SHA1 hash technology across custodians to reduce or suppress email thread duplicates. To suppress an email as a "thread duplicate," it must be wholly contained in the later, surviving email and have all the same recipients and attachments.

35.    Production of Physical Documents. Documents or records which either were originally generated or instantiated as ESI but now only exist in physical hard-copy format, or documents or records that were originally generated in hard-copy format shall be converted to a single page .TIFF file and produced following the same protocols set forth herein or otherwise agreed to by the parties.

36.    Labeling. Each document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable, the revision history. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

37.    Production Method. Documents shall be produced via an encrypted and secure file sharing service such as Sharefile or via FTP site. Each production shall include the production date and the Bates range contained in the production. If a load file is not provided with a CUSTODIAN field identifying the custodian, the documents included in the production shall be organized and identified by custodian, where applicable.

38.     The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

a.     Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

b.     The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under another part of this agreement).

c.     Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

i.     Deleted, slack, fragmented, or other data only accessible by forensics.

ii.     Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

iii.     On-line access data such as temporary internet files, history, cache, cookies, and the like.

iv.     Data in metadata fields that are frequently updated automatically, such as last-opened dates.

v.     Back-up data that are duplicative of data that are more accessible elsewhere.

vi.     Server, system or network logs.

vii.    Data remaining from systems no longer in use that is unintelligible on the systems in use.

viii.    Electronic data (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

39.    Privilege and Work Product Claims. For any document withheld or redacted, the producing party will produce privilege/redaction logs in a format that permits electronic sorting and searching. A producing party will produce a separate log for each production within 45 days of the production of documents for which a privilege is asserted. When there is a chain of privileged e-mails, the producing party need only include one entry on the log for the entire e-mail chain.

40.    For each document withheld or redacted, the producing party's privilege/redaction logs shall include the following information:

a.    Custodian or source;

b.    Date;

c.    Author(s)

d.    For documents produced, but redacted on the ground of privilege, the starting and ending Bates number;

e.    Recipient(s), CC(s) and BCC(s) (for e-mail and hard-copy communication);

f.    Specification of the privilege claimed;

g.     A description of the document and the basis for the privilege claim.

41.    Following the receipt of a privilege/redaction log, a receiving party may identify, in writing, the particular documents it believes require further explanation. The producing party must

respond to the request within 14 days of such identification. If a party challenges a request for further information, the parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter shall be brought to the Court.

42.    In consideration of this Protocol, the Parties waive any claim under 28 U.S.C. § 1920 for the reimbursement of any and all costs incurred for converting native or near-native documents to TIFF format. Without waiver of and with all Parties retaining their right to argue whether such costs should be taxable, the Parties also agree that any and all costs incurred for converting native files be capped at $150 per gigabyte of data should the Court determine that costs incurred for converting native files into near-native format are taxable. Nothing herein constitutes an acknowledgement (implicit or otherwise) by any party that ESI-related costs are taxable under 28 U.S.C. § 1920.


SO STIPULATED AND AGREED.

Dated: July 28, 2025

New York, New York


/s/ O. William Igbokwe                                    /s/ Peter G. Siachos
O. William Igbokwe                                        Peter G. Siachos
*Counsel for Plaintiff*                                   *Counsel for Defendant*


SO ORDERED.

Dated:  7/29/2025                                          _____
                                                          J. PAUL OETKEN
                                                          United States District Judge

EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

XERIANT, INC.

        Plaintiff,

v.

XTI AIRCRAFT COMPANY, DOE COMPANY #2,
and DOE PERSON #1-5,

        Defendants.

Case No. 23-CV-10656

Hon. J. Paul Oetken

## CONFIDENTIALITY AGREEMENT

I hereby affirm that:

Information, including documents and things, designated as "Confidential" or "Attorneys Eyes Only" as defined in the Protective Order entered in the above-captioned action (the "Protective Order"), is being provided to me pursuant to the terms and restrictions of the Protective Order.

I have received a copy of and have read the Protective Order.

I am familiar with the terms of the Protective Order, and I agree to comply with and to be bound by its terms.

I submit to the jurisdiction of this Court for enforcement of the Protective Order.

I agree not to use any information disclosed to me designated Confidential or Attorneys Eyes Only pursuant to the Protective Order except for purposes of the above-captioned litigation and not to disclose any of this information to persons other than those specifically authorized by the Protective Order without the express written consent of the party that designated the information as confidential or by order of the presiding judge.

I also agree to notify any stenographic, clerical, or technical personnel who are required to assist me of the terms of the Protective Order and of its binding effect on them and me.

I understand that I am to retain all documents or materials designated as or containing information designated Confidential or Attorney Eyes Only in a secure manner, and that all such documents and materials are to remain in my personal custody until the completion of my assigned duties in this matter, whereupon all such documents and materials, including all copies thereof, and any writings prepared by me containing any information designated Confidential or Attorney Eyes Only are to be returned to counsel who provided me with such documents and materials.

_____
Signed

_____
Printed Name

_____
Date